IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

           Plaintiff-Respondent,

v.                                                                          CIV 00-1256 MV/KBM
                                                                            CR 97-692 MV

WILLIS JEFFREY KELLY,

           Defendant-Movant.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

In United *States v. Kelly,* CIV 00-1256 MV/KBM, this matter is before the Court on

Defendant's § 2255 motion to vacate, motion to amend, motion to supplement, motion to

conduct discovery, and motion for trial transcripts.  *See Docs. 108, 131, 133, 134.*[1]  Also pending

in *United States v. Kelly,* CIV 99-1048 MV/RLP is a motion to reduce sentence, motion for

judgment on the pleadings, and motion for counsel.  *See Docs 98, 126.*  The United States Court

of Appeals for the Tenth Circuit previously remanded CIV 99-1048, *Doc. 129,* and, given the

posture following remand, that case is now related to this § 2255 action.

I have reviewed the entire record and all of the transcripts of the criminal proceedings.

Because it is possible to resolve all of the issues in all of the pending matters on the pleadings, I

find that an evidentiary hearing is not necessary.  *E.g., United States v. Kennedy,* 225 F.3d 1187,

1193 (10th Cir. 2000) ("Under 28 U.S.C. § 2255, the district court is required to conduct an

evidentiary hearing [u]nless the motion and files and records of the case conclusively show that

---

[1]  Unless otherwise noted, all citations are to documents in the criminal record.

the prisoner is entitled to no relief.") (internal quotations and citations omitted), *cert. denied,* 121

S. Ct. 1406 (2001); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2255.*  Having

considered the arguments and relevant law, I recommend that Kelly's requests for habeas relief be

denied and both actions dismissed with prejudice.

## I.  Factual & Procedural Background

### A.  Trial and Direct Appeal

Defendant was indicted on November 20, 1997 for entering a federal credit union ("bank"

or "credit union") with intent to commit a felony in violation of 18 U.S.C. § 2113(a) and for

attempted escape in violation of 18 U.S.C. § 751(a).  *Doc. 8.*  Matters were delayed considerably

because Kelly did not cooperate with his attorneys and pursued, what I conclude the record amply

demonstrates, a course of obstreperous behavior both with prison officials and the court.  Mr.

Albert Lassen, Defendant's third appointed attorney, finally took the matter to trial, and the jury

convicted Kelly on both counts.

As the Tenth Circuit observed on the direct appeal, the evidence against Kelly was

"overwhelming."  *See United States v. Kelly,* 182 F.3d 934, 1999 WL 339692 (10th Cir. 5/28/99)

(unpublished).  The Albuquerque Police Department received an alarm call for the credit union

around 5:30 a.m. on Halloween, 1997.  The first officer on the scene was just blocks away and

arrived at the bank within minutes.  He immediately investigated around the outside of the

building and observed only a truck in the parking lot and a mountain bike in the shrubbery.  The

doors were secure, save for the front door, which was ajar.

Two other units arrived as backup within seconds, which made for a total of five officers

plus a canine on the scene.  The officers positioned themselves at different spots around the

2

building.  One officer could see a suspect -- a tall thin male -- inside the bank.  He and the officer

with the canine announced their presence and shouted at the suspect to come out, or else they

would use the dog to find him.  When the suspect did not exit, the two officers and the dog

entered the bank.

The credit union was in disarray.  The front door and interior doors and frames were

damaged, the night depository safe was pulled from the wall, desk drawer contents had been

emptied on the floor, and papers were strewn about.  The officers inside the bank heard "a couple

of loud thuds" and, shortly thereafter, they heard the officers outside shouting and saw them

chasing the suspect.

Meanwhile, the officers outside the building had also heard the banging and saw a back

door to the bank "fly open."  They observed a tall person wearing gloves and black clothing run

out of the door with a flashlight and a crowbar in his hands.  The officers drew their weapons and

one ordered the suspect to the ground.  The suspect stopped and then took off running.  The two

officers outside the building gave chase.  While one of the officers in the bank also gave chase, the

other officer and the dog remained to see if anyone else was in the building. There was no one

else in the bank and the officers saw no other people in the area throughout the episode.

The officers only lost sight of the suspect "for a couple of seconds" during the chase.

Kelly was soon apprehended while trying to scale a brick wall, and officers identified him as the

same person they saw exit the back door of the bank.  Further investigation revealed that a

backpack and flashlight had been tossed in the bank parking lot when the suspect fled.  The

officers also retrieved a crowbar, gloves, and a hat from the bank parking lot.

Kelly was found to have three credit cards in his pants pocket.  The cards had been taken

from the desk drawer of one of the bank's employees, who are not permitted to keep money in their desks. Because teller money drawers were locked in the vault and the depository safe was unopened, Defendant was unable to take cash from the bank during the short time he was in it. No other items were taken when he fled the premises.

The FBI took Defendant into custody and transported him to the United States Federal Courthouse in Albuquerque for a first appearance on presentment of the criminal complaint. While in the custody of the United States Marshal, Defendant attempted to escape by going through hole he made in the ceiling of the cellblock. The damage was substantial. Deputy Marshals and other law enforcement personnel discovered the attempt after hearing a loud noise. They investigated and found Defendant dropping down from yet another hole in the ceiling located in a secured hallway. Defendant ran, was pursued, and apprehended.

Defendant was tried and convicted on both counts of the indictment in September 1998. *Doc. 70.* On November 13, 1998, he was sentenced to sixty months incarceration and three years supervised release for each count, with the sentences to run concurrently. *See Docs. 81, 89, 92.*

### B. Direct Appeal & Post-Conviction Proceedings

Kelly's attorney filed an appeal and an "*Anders*" brief. *See Anders v. California,* 386 U.S. 738 (1967). Counsel identified two possible issues for appeal – the trial court's refusal to give a lesser-included offense instruction on bank larceny under 18 U.S.C. § 2113(b) and its refusal to allow Defendant to testify about his conditions of confinement. In an order and judgment dated May 28, 1999, the United States Court of Appeals for the Tenth Circuit affirmed, and there was no appeal to the United States Supreme Court. Therefore, Kelly's conviction became final for the purposes of AEDPA's one-year statute of limitations on August 26, 1999 and a § 2255 motion

4

would have been due August 27, 2000.  *See United States v. Burch*, 202 F.3d 1274, 1276 (10th Cir. 2000) ("judgment of conviction is final after time for seeking certiorari review has expired").

Kelly's first post-conviction proceeding was filed within the limitations period on September 16, 1999, and was styled as a motion for relief under FED. R. CRIM. P. 32 and 35. Kelly challenged the factual accuracy of virtually every paragraph of the pre-sentence report.  *See Doc. 98.*  This motion opened the parallel civil action – *United States v. Kelly,* CIV 99-1048 MV/RLP.  In that action, the United States argued that some issues were waived because Defendant did not object to them in writing or at the sentencing hearing, and the remainder were without merit either as a matter of fact or law.  *See Doc. 99.*  The motion was denied on the merits on October 18, 1999.  *Doc. 100.*

Because the Clerk's automated case-opening system categorizes all motions challenging federal convictions or sentences as if they were filed pursuant to § 2255, Kelly's motion was treated "administratively" as a § 2255 motion.  On appeal, Kelly challenged the district court's "characterization" as a § 2255 matter, concerned that it would foreclose him from filing another § 2255 motion asserting additional claims.  In vacating and remanding for further proceedings, the Tenth Circuit stated:

> We do not question the district court's determination that Kelly's motion was most appropriately viewed as a § 2255 motion.  As noted above, Rules 32 and 35 do not provide the type of relief Kelly sought at the time he filed his motion, and he did seek to reduce his sentence, which is typical § 2255 relief.  However, because the district court did not take any steps to determine whether Kelly agreed to its treatment of his motion, and because he, in fact, disagreed with its treatment, we will vacate the court's order denying the motion and remand the case so that Kelly may make all of his collateral arguments in a single § 2255 motion.

*United States v. Kelly,* 235 F.3d 1238, 1242 (10th Cir. 2000).  Moreover, the Tenth Circuit held

that "the limitations period on the filing of Kelly's § 2255 motion should be [equitably] tolled from the date the district court recharacterized his motion as a § 2255 motion, on October 18, 1999, until the date of this decision [December 19, 2000]." *Id.* at 1243.

In the interim, however, Kelly had already timely filed this action by mailing his § 2255 petition on August 25, 2000.  In response to the Tenth Circuit's remand, in CIV 99-1048 he filed a "motion for judgment on the pleadings," which asks that its issues be included in this case and that he be granted counsel.  That motion notes that Kelly filed a motion to amend in this action to raise his existing and new CIV 99-1048 claims here.  *See Doc. 131* (claims that counsel was ineffective for failure to object to belated pre-sentence report and its contents, to career offender status, or trial judge's decision to "depart").  These two motions thus bring the CIV 99-1048 issues within the purview of this case, even if the cases are not formally consolidated.

Kelly raises four issues in his original § 2255 motion:  (1) invalidity of indictment, (2) speedy trial violation, (3) juror misconduct, and (4) ineffective assistance of trial counsel.  His motions to amend and supplement in this action do not change the four categories of claims but merely embellish his grounds and/or arguments in each of the four areas, primarily ineffective assistance of counsel.

The United States argues that the first three issues were decided by the Tenth Circuit on direct appeal and it found no error.  In the alternative, the government contends that if Kelly did not raise them on direct appeal, the first three issues were of record and are therefore procedurally defaulted.  The United States also argues that defense counsel was not ineffective.  As for CIV 99-1048, the government argues that the case is moot, and that the claims lack merit for the same reasons the action was previously dismissed.

6

## II.  Analysis

### A.  Issue Preclusion and Procedural Default

It appears that the doctrine of issue preclusion can apply in a first § 2255 motion.  That is, if issues have been raised and decided on direct review, they cannot then be relitigated in a § 2255 motion.

> [T]hat an ineffectiveness claim is raised and adjudicated on direct appeal will not procedurally bar an ineffectiveness claim in a proceeding under 28 U.S.C. § 2255, where new reasons are advanced in support of that claim. It should go without saying that the *identical* reasons in support of ineffectiveness cannot be litigated twice. That is prevented by the doctrine of issue preclusion.

*United States v. Galloway*, 56 F.3d 1239, 1242-43 (10th Cir. 1995) (emphasis original).[2]

Similarly, a court may not entertain claims that could have been raised on direct appeal but were not, unless Defendant shows cause and either prejudice or a fundamental miscarriage of justice.

*E.g., United States v. Warner,* 23 F.3d 287, 291 (10th Cir. 1994).  In this action, the United States raises issue preclusion as well as procedural default and, as such, is entitled to a ruling on them.

*E.g., United States v. Allen,* 16 F.3d 377, 378 (10th Cir. 1994).

On direct appeal, the Tenth Circuit noted that:

> The certificate of service filed as a part of [counsel's *Anders*] brief indicated defendant was mailed a copy of the brief and, thereby, has had an opportunity to raise any additional points.  Defendant has filed no additional pleading to date.

_____

[2]  *See also Cabrera v. United States,* 972 F.2d 23, 25 (2d  Cir. 1992) ("[a]s we have held previously, section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal"); *United States v. Orejuela,* 639 F.2d 1055, 1057 (3d Cir. 1981) (noting "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255") (citations omitted)

1997 WL 339692 at *1.  In affirming the conviction, the court noted that it "conducted an independent analysis of the record and find[s] no error in *any* of the district court's rulings."  *Id.* at *2 (emphasis added).

Having thoroughly reviewed the record, I disagree with Kelly that the first three issues were not "ruled" on either by Judge Vázquez or the Tenth Circuit.  The Tenth Circuit had before it parts of the record and all transcripts of the trial and hearings, where the arguments and rulings on the first three issues can be found.  *See Doc. 113* at 2; *Docket Sheet* in CIV 99-1048 (1/12/00 entry noting return of 10 volumes of record on appeal in Appeal Number 98-2339).  In saying that it reviewed the materials independently and found no error in *any* ruling, I find that the Tenth Circuit necessarily considered and rejected the arguments even though it did not discuss its reasons in detail.

Even if the doctrine of issue preclusion does not bar the claims, the doctrine of procedural default does.  The Tenth Circuit noted that Kelly did not file anything in response to counsel's *Anders* brief.  Kelly now asserts that he was unaware that the case was on appeal and never received a copy of the *Anders* brief.  He further contends that had he known of the appeal and brief, he

> without question would have advised said lawyer Mr. Lassen, to withdraw, and movant would have informed both this Honorable Court and the U.S. Court of Appeals for the Tenth Circuit that movant needed an appointed attorney to file an appeal on direct review or that movant wanted to file pro se.

*Doc. 135* at 19-20; *see also Doc. 125* at 5.

Kelly's attempt to blame his default on Mr. Lassen is unavailing.  Kelly claims that he "never asked said trial counsel Mr. Albert B. Lassen, to file and appeal NOR did said counsel Mr. Lassen, ask this said Defendant if he (Mr. Lassen) could file an appeal on this Defendant's

behalf." *Doc. 121* at 9.  I have reviewed Defendant's history of chronically filing letters and pleadings with this court and the Tenth Circuit during the course of his criminal trial.  I conclude that if Kelly had intended to appeal he would have, regardless of what Mr. Lassen was pursuing.

Even assuming Kelly did not respond to the *Anders* brief because he never received it, he still procedurally defaulted the claims because nowhere in his voluminous pleadings does Kelly assert that he wanted to appeal his conviction or intended to appeal his conviction.  Thus, the first three claims would be procedurally defaulted for failure to present them on direct appeal, and there has been no showing whatsoever of cause, prejudice, or a fundamental miscarriage of justice.

In the alternative, even if the claims are not barred procedurally, I find them without merit for the reasons set forth below.

### B.  Validity of the Indictment

Kelly asked all of his attorneys to move to dismiss the indictment, and they declined to do so.  To understand Defendant's "invalid indictment" argument, some detail is required.  In Count I of the Indictment, the Grand Jury charged as follows:

> On or about the 31st day of October, 1997, in Bernalillo county, in the District of new Mexico, the defendant, WILLIS JEFFREY KELLY, *did enter* the Rio Grande Federal Credit Union, *a credit union* the accounts of which were then insured by the National Credit Union Administration, *with intent to commit in such credit union a felony affecting such credit union,* that is, the taking and carrying away with intent to steal and purloin, property and money and other things of value exceeding $1,000 belonging to and in the care, custody, management and possession of such credit union **in violation of Section 2113(a) of Title 18, United States Code.**

Doc 8 (emphasis added).  Section 2113(a) has two paragraphs.  They are written in the disjunctive and define two different crimes – "robbery" and "entry with intent."  Kelly was

indicted under the second paragraph, which defines the crime of entry with intent. The language

of the Indictment in italics above tracks the exact language of that portion of the statute:

> Whoever enters or attempts to enter any . . . credit union . . . with
> intent to commit in such . . . credit union . . . any felony affecting
> such . . . credit union . . . in violation of any statute of the United
> States, or any larceny —

18 U.S.C. § 2113(a).[3] The penalty for violation of either paragraph of § 2113(a) is a fine "or

imprison[ment] not more than twenty years, or both." *Id.*

Section 2113(b), on the other hand, prohibits what is commonly referred to as "larceny" –

taking and carrying away, with intent to steal or purloin, money or property, from a credit union –

and also has two paragraphs. It imposes a terms of imprisonment of no more than one year up to

ten years depending on whether the value of what is stolen exceeds $1,000.

As best I can discern, Kelly believes that by including the "steal and purloin, property and

money and other things of value exceeding $1,000" language of 18 U.S.C. § 2113(b), he was not

charged under § 2113(a). Thus, he argues, the conviction for violating Section 2113(a) cannot

stand. Such an argument strikes me as absurd. Mere use of the language to specifically advise

Kelly of the felonious intent that the government sought to prove simply did not convert the

charge from one brought pursuant to 2113(a) to one brought under 2113(b).[4]

Kelly further asserts that no money was taken from the credit union and the "value" of the

credit cards did not exceed $1,000. On this basis, Mr. Lassen requested a lesser-included offense

---

[3] The elements for "robbery" under the first paragraph of Section 2113(a), in contrast, requires proof of "force and violence" or intimidation or extortion.

[4] As the United States explained during the hearing on jury instructions, it intended to draft the Kelly indictment narrowly and charge entry with intent but not larceny. *Trial Transcript* at 274. It chose the § 2113(b) language to describe what felony Kelly intended when he entered the credit union.

instruction under § 2113(b) which was denied.  Kelly maintains that he was convicted of
something for which he was not charged and could not have committed – a larceny of valuables in
excess of $1,000.  *See Doc. 108* at 8; *Doc. 121* at 2-7; *Doc. 131* at 6, 19; *Doc. 134* at 5.

        An early United States Supreme Court case noted that by making entry with intent a
crime punishable with twenty years imprisonment, Congress was covering the situation, as in
Kelly's case, "where a person enters a bank for the purpose of committing a crime, but is
frustrated for some reason before completing the crime."  *Prince v. United States,* 352 U.S. 322,
328 (1957).  Thus, "even if the culprit should fall short of accomplishing his purpose, he could be
imprisoned for 20 years for entering with the felonious intent."  *Id.* at 329.  Indeed, the Tenth
Circuit has held that entry with intent can be punished more severely than a completed larceny:

>              We are of the opinion that Congress . . . added the larceny
>          [§2113(b)] provisions . . . to cover a situation where a person
>          entered a bank with no unlawful intent, but after entry formed an
>          intent to commit and committed a larceny, or where a larceny was
>          committed and the fact of entry with unlawful intent could not be
>          established.
>                                    * * * * *
>          [W]e think Congress intended that if a person entered a bank with
>          intent to commit a larceny and after entering the bank committed a
>          larceny of property . . . the maximum imprisonment sentence which
>          could be inflicted is 20 years.

*Purdom v. United States,* 249 F.2d 822 (10th Cir. 1957); *cert. denied,* 355 U.S. 913 (1958); *see
also United States v. Stead,* 740 F.2d 657, 659 (8th Cir.) (heavier prison term for entering with
intent than for larceny is not cruel and unusual punishment), *cert. denied,* 469 U.S. 1090 (1984).

        As the decisions above illustrate, Kelly's arguments are without merit.  While the crimes
of entry with intent, robbery, and larceny can be related, they are separate crimes.  To the extent
that they ever "merge," it is only for punishment purposes.  Clearly, entry with intent can be
punished absent proof of a completed larceny.  Thus, the indictment would not have been

dismissed for failure to charge Kelly under the correct statute.

In addition, at the time Kelly was indicted, the Tenth Circuit had held that § 2113(b) is a lesser-included offense of a robbery charge under the *first* paragraph of § 2113(a).  *See United States v. Brittain,* 41 F.3d 1409, 1411, 1415 (10th Cir. 1994).  On Kelly's direct appeal, the Tenth Circuit indicated that *Brittain* would have been controlling if he had been indicted under the first paragraph of § 2113(a), but

> [s]ince the second paragraph of § 2113(a) requires no such 'force and violence' or intimidation . . . § 2113(b) is not a lesser included offense of the second paragraph of § 2113(a) where, as here, it is undisputed that defendant entered or attempted to enter a credit union with intent to commit a felony or larceny.

1999 WL 339692 at *1.  *Brittain* has since been abrogated by a recent United States Supreme Court decision that holds § 2113(b) is *not* a lesser included offense of a § 2113(a) robbery charge. *Carter v. United States,* 530 U.S. 255 (2000).  Thus, I conclude that there was no error in denying a lesser-included instruction and the jury was properly instructed on the elements of entry with intent.[5]

---

[5]  They were instructed:

> Title 18, United States Code, section 2113(a), makes it a crime for anyone to enter a credit union with the intent to commit in that credit union a felony affecting that credit union.
>
> For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt:
>
> First:    That the defendant entered the Rio Grande Credit Union;
> Second:  That the defendant entered the Rio Grande Credit Union with the intent to commit the following crime:  to take or carry away with the intent to steal or purloin, any property or money or other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of the Rio Grande Credit Union; and
> Third:    That the Rio Grande Credit Union was a credit union the accounts of which were then insured by the National Credit Union Administration.
> You are instructed that the parties have stipulated that the Rio Grande Credit

## C.  Juror Misconduct

After the jury had rendered its verdict and been excused, Judge Vázquez brought to counsel's attention that the previous day, a courtroom deputy clerk had overheard a juror say "you know these criminals don't do anything to help themselves."   Apparently Judge Vázquez had just learned of the comment.  *Trial Transcript* at 352.  Kelly asserts that the comment constitutes juror misconduct because it establishes the juror was making negative comments about him, and contends that his attorney was ineffective in failing to move for a mistrial based on the comment.  *See Doc. 108* at 7; *Doc. 121* at 14-15; *Doc. 131* at 18.

The comment does not does involve the juror becoming privy to extraneous information nor does it involve any expression of a premature conclusion of guilt.  Indeed, the content of the statement does not even refer to Kelly specifically,  and it "tells us nothing about her attitudes toward Defendant and his guilt or innocence" or "about her attitudes toward the witnesses' credibility."  *United States v. McHorse,* 179 F.3d 889, 904 (10th Cir.), *cert. denied,* 528 U.S. 944 (1999); *see also United States v. McVeigh,* 153 F.3d 1166, 1185-1187 (10th Cir. 1998) (one juror said he hoped he would not be the hold out, to which another juror replied, "It wouldn't be very hard.  I think we all know what the verdict should be."), *cert. denied,* 526 U.S. 1007 (1999).

Thus, the comment neither establishes that an actual bias existed nor does it provide a basis on which to impute inherent bias as a matter of law.  *McHorse,* 179 F.3d at 904.  Moreover, even if bias is shown, "not every incident requires a new trial.  The test is whether . . . the

---

Union was a credit union the accounts of which were then insured by the National Credit Union Administration.  You may therefore accept the third element as conclusively established.

*Doc. 69,* Instruction 11.

misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *Id.* (internal quotations and citations omitted). "A trial is fundamentally unfair . . . if it is 'shocking to the universal sense of justice.'" *United States v. Tome,* 3 F.3d 342, 353 (10th Cir. 1993) (quoting *United States v. Russell,* 411 U.S. 423, 432 (1973)); *see also Jackson v. Shanks, Jackson v. Shanks,* 143 F.3d 1313, 1322 (10th Cir.), *cert. denied,* 525 U.S. 950 (1998). Having reviewed the entire record, there is not a hint that the trial or result was unfair.

### D. *Speedy Trial*

Although Kelly was indicted on November 20, 1997, he was not tried until September 2, 1998. Kelly argues that his right to a speedy trial was denied because he was not tried within seventy days as provided under the federal Speedy Trial Act. *See* 18 U.S.C. § 3161; *see also Doc. 108* at 7; *Doc. 121* at 15-16; *Doc. 131* at 17; *Doc. 134* at 4-5.[6] Kelly disagrees with the trial court's calculation of excludable delay under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h).

A number of overlapping motions tolling the speedy trial clock under § 3161(h)(1)(F) need not be addressed because of the longest pending motion – the United States' motion in

---

[6] To invoke the statutory speedy trial provision, a defendant is required to expressly move for dismissal. "Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). Kelly filed a "motion to be releast (sic) from custody, for violation of movants right to a speedy trial" in which he argued that he had not been taken to trial on January 12, 1998 when he intended to represent himself. *Doc. 24.* The motion was stricken by the Clerk because at that time, Kelly was represented by the second attorney the Court had appointed to represent him. *See Doc. 27* (striking *pro se* pleadings); *Doc. 18* (allowing Benjamin Gonzales to withdraw but not permitting Kelly to proceed *pro se* and instead appointing J. Wayne Griego, who had moved for and was granted a continuance of the January 12th trial date). Although the motion asking for dismissal on speedy trial grounds was stricken, under the circumstances, I will assume Kelly preserved his statutory argument.

limine.[7]  This motion was filed just before the original trial setting of January 12, 1998.  Briefing

on the motion was not completed until late August 1998, however, because Kelly was

unsuccessfully attempting to hire an attorney.  Thus, the motion did not become ripe for

disposition until just before the trial setting.[8]  Judge Vázquez heard the arguments of counsel at a

hearing on the motion on the first day of trial after jury selection but before the jury was sworn

and any evidence taken.  *See Trial Transcript* at 66-74.[9]

Judge Vázquez also addressed the speedy trial issue at a pre-trial conference held August

13, 1998.  *See 8/13/98 Transcript* at 34.  She found that by mid-August, there were still forty-

four days left on the speedy trial clock, which is consistent with my independent calculations. *Id.*;

*see also United States v. Gonzales,* 137 F.3d 1431, 1434 (10th Cir. 1998) (defendant's motion in

limine excludable from time filed to time of hearing); *United States v. George,* 85 F.3d 1433,

1436 (9th Cir. ) (same; government's motions in limine); *United States v. Johnson,* 32 F.3d 304,

306 (7th Cir. 1994) (same).  Thus, there was no speedy trial act violation.

Furthermore, unlike the statutory speedy trial deadline, the Sixth Amendment speedy trial

guarantee is not conditioned to a precise time limitation.  Since less than a year passed between

indictment and trial, no prejudice is presumed and the constitutional claim fails.  *See United States*

---

[7]   The Act specifically excludes time "from the filing of [any pretrial] motion through the conclusion of the hearing"on the motion.  *See* 18 U.S.C. § 3161(h)(1)(F).

[8]   Indeed, at the hearing on the motion in limine to preclude the defense from making a "missing witness" argument at trial, the Assistant United States Attorney noted "Of course, I filed this motion two lawyers ago."

[9]   "Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is "reasonably necessary."  *Henderson v. United States*, 476 U.S. 321, 330 (1986).

*v. Lugo,* 170 F.3d 996, 1002 (10th Cir. 1999); *see also United States v. Lindsey*, 47 F.3d 440, 443 (D.C. Cir.1995) (delay extending beyond approximate one-year period triggers application of *Barker* factors), *vacated on other grounds by Robinson v. United States*, 516 U.S. 1023 (1995). Even balancing the four *Barker v. Wingo,* 407 U.S. 514 (1972) factors, Defendant's constitutional claim fails.  The bulk of the relatively short delay is attributable to Kelly – his unsuccessful efforts over many months to try an find an attorney willing to represent him and side-tracking the court with his letters and *pro se* pleadings concerning his conditions of confinement.

Finally, Kelly makes no showing that he was prejudiced in any way.  Mere passage of time "does not give rise to a violation of the Constitution[al] . . . right to a speedy trial."  *United States v. Brown,* 600 F.2d 248, 254 (10th Cir.) (holding that "the contention that he was deprived of his Sixth Amendment right to a speedy trial is not meritorious since it was *attributable to efforts by the appellant* to delay the proceedings so that he could defend himself") (emphasis added), *cert. denied,* 444 U.S. 917 (1979).  Accordingly, this claim is without merit.

### E.  Ineffective Assistance of Counsel

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984) governs ineffective assistance of counsel claims.  *E.g., Mayes v. Gibson,* 210 F.3d 1284, 1288 (10th Cir.), *cert. denied,* 121 S. Ct. 586 (2000).[10]  Kelly's claims fail on both counts.  All of Kelly's

---

[10]  Movant must first show that counsel's representation was "objectively" unreasonable. *Clayton v. Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 100 (2000).  In doing so, he must overcome the "strong presumption" that counsel's conduct falls within the "wide range" of conduct that is considered to be trial strategy and is deemed "reasonable professional assistance."  To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong."  *Moore v. Gibson,* 195 F.3d 1152, 1178 (10th Cir. 1999), *cert. denied,* 530 U.S. 1208 (2000); *see also Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999).  Defendant must also establish "prejudice" – absent counsel's errors, there is a "reasonable probability" that the outcome of the trial would have been different.  *Moore,* 195 F.3d at 1178.  "Reasonable probability" means that confidence in the outcome is undermined.  *Foster*

ineffectiveness claims relating procedural bar, the direct appeal, the *Anders* brief, and the three claims discussed above establish neither cause nor prejudice.

The bulk of his other claims, which he raises in the petition and motion to amend, regard counsel's trial strategy.  Kelly alleges that Mr. Lassen "refused" to show his innocence.  Kelly contends that he was in the wrong place at the wrong time and was a convenient mark for the police.  Under Kelly's theory of the proper defense, he was just passing by the bank on his way to work as a day laborer when he was apprehended and the credit cards were planted on him by the police.  Kelly faults Mr. Lassen for a number of things, yet many of these alleged deficiencies are internally inconsistent or belied by the record.

For example, Kelly claims Mr. Lassen had "limited" contact with him because counsel was convinced of Kelly's guilt and "biased" against him.  However, while imprisoned, Kelly engaged in conduct such as using legal papers to set fire to his cell or plug up the toilet, throwing feces, and violent behavior.  Defendant's disruptive conduct, lock down detention status, and law library and telephone privileges were the subject of several hearings by Judge Vázquez and are well-documented in the record.  Any "limits" in contact with Mr. Lassen were the result of Kelly's own behavior.  Furthermore, when Mr. Lassen did see Kelly at the prison, Kelly was uncooperative, engaging in his continuing his protest of his restricted conditions.

Kelly claims that Mr. Lassen was afraid of him as evidenced by the attorney having two Marshals sit behind him with their guns and badges showing.  However, Marshals are present in our courtrooms during criminal trials, and they carry badges and have guns.  Given their justified

---

*v. Ward,* 182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 529 U.S. 1027 (2000).  The prejudice prong may be addressed first and exclusively, if that is the easier course.  *E.g., Scoggin v. Kaiser,* 186 F.3d 1203, 1207 (10th Cir.), *cert. denied,* 528 U.S. 953 (1999).

17

concerns about Kelly's violent behavior and history of flight, it was reasonable to have at least two present. Their presence had everything to do with Kelly and nothing to do with Mr. Lassen.

It is evident from reading the transcripts that counsel's strategy on the entry count was to raise a reasonable doubt on the element of intent. Mr. Lassen's theory of defense was that because no money or other property exceeding $1,000 was taken from the bank and because the bank was vandalized, the evidence only established an intent to engage in hooliganism on Halloween. Mr. Lassen's theory on the escape charge was "impossibility" because Kelly was being held in a secure area.

Defendant argues Mr. Lassen failed to find witnesses to corroborate his day laborer version of events. It is no wonder that Mr. Lassen did not follow up on this. Kelly admits in his motion that the "director" of the day laborer site said he did not recognize Kelly's picture and did not locate Kelly in his employment files when given Kelly's name, address, social security number etc. *See Harvey v. United States,* 850 F.2d 388, 400 (8th Cir. 1988) ("[a]n attorney does not have an obligation to undertake an investigation which, in his reasoned judgment, does not have promise").

Kelly argues that Mr. Lassen should have objected to the use of the bank video surveillance tape because it only showed a police officer and the dog. Mr. Lassen understandably did not object – the jurors could see that it was not Defendant on the tape. Kelly also contends that counsel failed to introduce evidence that other burglaries continued in the area after Kelly's arrest. Such evidence is minimally relevant since at least one officer testified that the bank was in an area where there had been a "rash" of entries. Furthermore, consistent with counsel's strategy, Mr. Lassen argued that these were crimes of vandalism.

Kelly argues that Mr. Lassen was ineffective for failing to demonstrate that Kelly had $246

in his wallet.  The officers testified only that they found some change in his pockets, and Kelly felt

that this point would discredit the officers' testimony.  However, having that much cash on his

person could have aroused juror suspicions that Kelly somehow actually did manage to take

money from the bank, not to just vandalize it.

 Defendant claims that counsel was "conflicted" because he was convinced of Kelly's guilt

and "biased" against him.  However, even if Mr. Lassen "did not like [Kelly] or did not trust him

[that] does not rise to the level of a conflict of interest.  Personality conflicts are not conflicts of

interest."  *Hale v. Gibson,* 227 F.3d 1298, 1313 (10th Cir. 2000) (citing *Morris v. Slappy,* 461

U.S. 1, 13 (1983)).  Kelly also claims Mr. Lassen was "conflicted" because he was friends with

the arresting officers, but nothing in the record shows that Mr. Lassen was "actively representing

conflicting interests."  Mr. Lassen was not representing the officers in any capacity.  Moreover,

there is absolutely no showing that the alleged conflict "adversely affected" his attorney's

performance.  *See United States v. Cook,* 45 F.3d 388, 393 (10th Cir. 1995).[11]

Other asserted instances of ineffective counsel are premised on defense counsel's failure to

acquiesce to Kelly's suggestions:  failure to object to the evidence of the mountain bike because

the bike was not introduced into evidence; failure to obtain pictures of the credit union in the early

morning hours to show how dark it was and that the credit cards did not show in some of the

pictures; and failure to object or cross-examine on the allegedly "planted" credit cards.   The right

---

[11]  *See also Berget v. Gibson,* 188 F.3d 518 (10th Cir. 8/5/99) ("Nothing in the record
supports the assertion that trial counsel's acquaintance with Jim Meadows had any impact on his
representation of Mr. Berget or that there were conflicting interests actually represented by
counsel. Indeed, the only proffer to the contrary is the Petitioner's inadequately supported
assertion that his trial counsel and Jim Meadows were 'good friends.' Because Mr. Berget has
failed to demonstrate either an actual conflict or adverse effect upon the level of representation,
this claim must fail.") (unpublished), *cert. denied,* 529 U.S. 1042 (2000).

to counsel, however, does not require that the attorney "blindly follow[] a defendant's instructions." *United States v. Padilla,* 819 F.2d 952, 956 (10th Cir. 1987). All of these contentions fall squarely within the trial strategy arena and simply do not amount to ineffective assistance of counsel.

Most importantly, Kelly utterly fails to show prejudice for any of his many ineffectiveness claims. He was caught red-handed committing both of the crimes with which he was charged. On direct appeal, the Tenth Circuit affirmed the conviction and characterized the evidence against Kelly as overwhelming. There is simply no reasonable probability that the outcome of the trial would have been different.

### F.  CIV 99-1048 Issues

This Court previously decided the merits of Kelly's motion as to his disputes with the contents of the pre-sentence report. He now seeks to amend to bring those claims into this case and add ineffective assistance of counsel claims based on counsel's alleged failures with regard to objections to the pre-sentence report. For the reasons set forth above, the underlying merits of the claims are procedurally barred. *See Allen,* 16 F.3d at 378 ("procedural bar applies to a defendant's collateral attack on his sentence, just as it does to an attack on conviction").

Alternatively, the claims that Kelly raised in CIV 99-1048 should be denied for the same reasons they were previously denied.

> As [the government] argues, most of the alleged errors were
> waived, resolved at sentencing, or nonexistent. More important,
> Defendant makes no showing that any of the alleged errors
> enhanced his sentencing range or increased his sentence.
> Specifically, as examples, the restitution amount was based on
> actual receipts; certain prior arrests were not considered by the
> Court at sentencing; and Defendant's objection to the finding that
> he was a career offender under U.S.S.G. § 4B1.1 has no factual or
> legal basis. . . .  The motion presents no support for the relief

20

Case 6:00-cv-01256-MV-KBM   Document 29   Filed 05/01/01   Page 21 of 22

sought, and the motion will be denied.

*Doc. 100* (citations omitted); *see also 11/5/98 Transcript* at 75-93 (addressing Kelly's objections to the pre-sentence report).

Kelly also characterizes Judge Vázquez' sentencing decision as a "departure" (and counsel ineffective in failing to object) because she supposedly stated he was only facing thirty months incarceration during a pretrial conference. Actually, Judge Vázquez made the "thirty month" comment in the context of setting a trial date and did not say that Kelly faced only thirty months. She said; "*if* he's looking at a sentence of top range of 30 months, we need to get this thing tried." *8/13/98 Transcript* at 18. In fact, based on two prior felony convictions for rape and burglary, Kelly faced a guideline range of 51 to 63 months. *11/5/98 Transcript* at 94.

Although Kelly faced a statutory maximum of twenty years of imprisonment for the entry with felonious intent and five years for the escape, he received five years on each count with the sentences running concurrently. Kelly was sentenced within the applicable guideline range and well within the statutory maximums. His objections to the pre-sentence report were either waived, resolved, or without merit. Consequently, he cannot demonstrate that counsel was ineffective or that he was prejudiced. Thus, he has no cognizable claim under § 2255, *see United States v. Gordon,* 172 F.3d 753, 755 (10th Cir. 1999), or *Apprendi v. New Jersey,* 530 U.S. 466,120 S. Ct. 2348 (2000).

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1.      Defendant's Motion To Amend in CIV 00-1256 MV/KBM
        (*Doc. 22*) [CR 97-692, *Doc. 131*] be **granted** so that all of his
        claims can be raised in a § 2255 proceeding;

2.      Defendant's Motion To Supplement in CIV 00-1256 MV/KBM
(*Doc. 23*) [CR 97-692, *Doc. 134*] be **granted**;

3.      Defendant's Motion For Trial Transcripts and Discovery in
CIV 00-1125 (*Doc. 24*) [CR97-692, *Doc. 133*] be **denied**;

4.      The petition in CIV 00-1256 (*Doc. 1*) [CR 97-692, *Doc. 108*] be
**denied and the action dismissed with prejudice**; and

5.      A copy of these Proposed Findings be filed in CIV 99-1048
MV/RLP and in light of them, Defendant's Motion for Judgment
On The Pleadings (and request for counsel) in that action (*Doc. 14*)
[CR 97-692, *Doc. 126*] be **denied as moot**; and be **dismissed with
prejudice**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF
SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file
written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A
party must file any objections with the Clerk of the District Court within the ten day
period  if that party wants to have appellate review of the proposed findings and
recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES MAGISTRATE JUDGE